Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Sharon O. Johnson presiding, case number 21-1304, People v. William Gardner. Good afternoon. Thank you all for your patience. I'm Justice Sharon O. Johnson, presiding judge of the Sixth Division. I am joined by my colleagues, Justice Michael B. Hyman and Justice Carl A. Walker. For the record, we are also joined and being observed by students from the Appellate Clinic at the DePaul University School of Law, as well as students from the Texas Southern School of Law. Will the appellant's attorney please state your appearance for the record? Yes, this is Jonathan Yeasting of the Office of the State Appellate Defender. I'm substituting in for Brian Rayner of my office, who was on the briefs. Okay, very well. And will the appellee's counsel please state your appearance for the record? Assistant State's Attorney Amy McGowan for the People. Okay, you will each be granted 20 minutes in which to present your argument today, with the appellant being given the opportunity to speak. Attorney Yeasting, would you like to reserve any time for rebuttal? Yes, I'd like to reserve about two minutes, Your Honor. Okay. All right, very well. You may begin. Good afternoon, Your Honor, and may it please the court. In this shooting case, the evidence pointed to a suspect who we know possessed the murder weapon, who admitted committing a shooting in the vicinity of the shooting that day, and who was stopped by a detective. What do you mean by the vicinity? Yes, this is, of course, in terms of vicinity. We know that the gun that Mr. Levante Bell said he used is found in the alley that day. It's the Glock 22. Wait, but Bell didn't say he, it was Cooper, I thought, who said that Bell called him and said he had shot at a liquor store at Ketsey and Franklin. Is that correct? That's right. It's about four to five blocks north of the scene. I'd suggest that Mr. Bell is trying to set up an exculpatory account of why he's involved in this shooting, because we know that that Glock 22 that Levante Bell was given is the gun that is recovered just within a block of the scene of the shooting. Ballistics links it to the Vizella Winter shooting. He's calling his uncle in a panic, asking if this Glock 22, the specific gun that is the murder weapon, is registered and could be traced back, and the uncle says it can. He calls again in a panic and tries to come up with this story as to how he was involved in a different shooting purportedly four to five blocks away. And he's been worried that it is, the evidence shows that he and Gardner were at least friends because that's what he wrote when he visited him four times in prison. There is no evidence of any contact between Bell and Gardner before the shooting. I don't say that. I said afterwards they were friends. He and Bell knew one another. That's the important point. Whether there was contact beforehand is not important. What is important is that they knew each other. And so there is a connection between the gun in Bell's hands and the gun in Gardner's hands. And that is that Bell might have been nervous knowing that a shooting had transpired with Gardner having the gun. I mean isn't that a reasonable conclusion on the facts that the state offers no accountability theory because they're trying to get a firearm enhancement on my client only. They never put Levante Bell's photo before any of their witnesses. And recall that Levante Bell is stopped on this block at where the alley exits to Lake Street by Detective Rodriguez right in the wake of the shooting with a description that matches what was given of the offender. Oh wait wait let's let's talk about that. What is her description? The best that the Detective Rodriguez can recall is that it's a black male average height wearing dark clothing. Okay that's correct. Now what was the description by Shavers and the three officers of the suspect? Well the initial description isn't what is that? I said what is there and the record has their description. I mean I can say it if you want but I'm asking you what description did they give at the trial? They give at the trial once they have a Gardner and you know once they find a do-rag we're adding in these additional facts. What was the color of the pants? They say a dark t-shirt, blue or bright blue pants depending on the witness and they add in a do-rag gets added in after they recover the do-rag. But but the light blue pants comes up and we can see in the video it's not the greatest video but we can see pants are light so and Rodriguez described dark pants so that is something the jury could take account of. There's that the police officers say they're chasing someone with light blue pants. Rodriguez never mentioned that another lawyer could have asked Rodriguez about that at the trial never did. I believe the description that she offers is that it's dark clothing we don't get anything anymore. What I'm saying is the defense lawyer could have come out to say you know could he or she the officer would know what color the is we have these incredibly generic descriptions especially early on coming from the officers and I think officer Stritzel's fairly remarkable testimony suggests why. He actually admits that when there's a police involved shooting and you know these officers fired off eight rounds into the Garfield Park neighborhood you don't write anything down in the wake of the shooting. That is a striking admission to me to actually see in a record. Counsel let me ask you this approximately how many people were out in this within that block during the shooting? The video shows about six to eight people I can't recall specifically there's the group of men with one other person by them who seem to be involved in a dice game and hanging around and there's a few people in the foreground and one thing I note about the video is the video is somewhat distorted in shape and the color is remarkable that if you watch the shooter the color of the shooter's pants which was just brought up at points it looks to be a bright blue but as the shooter steps to the right because the saturation of the video is off the shooter's pants suddenly appear to be gray or it's a faded blue jeans and it makes me wonder if this bright blue description is something that came in later on after somebody saw the distorted color from the of the other people who were present were wearing was anyone else wearing any bright blue pants? I believe there's one person that like the shooter seems to be wearing perhaps blue jeans that you can see but we the only eyewitness we have to the shooting itself is Mr. Sharon Winters and he says my client didn't do it he says it was my client's five six he says there was somebody significantly taller than my client and that is the only actual eyewitness testimony we have to shooting. So let me just jump in for a second Mr. Easton I've been trying to jump in but I'm so polite that I kind of usually want to let you finish saying what you have to say before I jump in but you began to speak about the second phone call that Mr. Bell made and I then just Simon interrupted you and you didn't finish telling us about that tell us more about that second phone call to his uncle. Well the crucial thing of the second phone call is and this is within about an hour of the shooting he calls his uncle back he's figured out that this Glock 22 is traceable to the uncle and perhaps to him he calls the uncle back and says that he was involved in the shooting and he puts the location in that call a few blocks away like three or I think it's four or five blocks north of this scene on Maple Lake area and tells the uncle that he was shot at by somebody he fired shots back and then he ran from I believe he's saying he I ran from police officers just as the the three officers testimony is that my client purportedly did. And so is there any evidence that the gun that was later recovered was the gun that was owned by this uncle because I believe the gun was owned by the uncle correct? Yeah it is registered to the uncle he actually acknowledges and I believe he pleased to a probation case for transferring the gun to the uncle. The gun that the uncle initially reports is stolen that admits he gave it to to Levante Bell. That gun that Glock 22 is the one that is ballistically linked to the shooting and it's recovered along the the path that Levante Bell that Detective Rodriguez stopped Levante Bell when he was running from that scene. So based on what we have here then possibly we possibly we have two guns the gun that Levante was some some miles away where he fired that gun firing back at people who fired at him and then the gun that was allegedly recovered at the scene correct? I mean that that's that would be Levante Bell's argument that there are two guns there's that gun and there's the gun that I had when I was over here and so forth is that correct? That is a because Levante is specifically concerned about this one Glock 22 that is the murder weapon and he's saying I threw it in a yard in this area. Maybe he's a couple blocks off but unless there's multiple guns that Levante Bell threw in that area while he was running from the police you know then it's Levante Bell's the gun that Levante Bell saying he had that day. Okay I asked you was that correct that probably wasn't the right way for me to ask you that I think that's what we were that's what everybody was led to believe is what I should have said rather than is it correct and you've answered the question so let me ask you this though so given our standard of review here we're reviewing court and we've we must consider the light and the evidence in the light most favorable to the state at this point and our question is whether or not any reasonable jury could have found him guilty of these charges based upon the evidence give us the other evidence that you have you just told me something interesting which I did know that was in the record but I want to ask you more about it tell us what else you have that we can now look at this evidence in a light most favorable to the state and still take the position that the evidence is not sufficient. Sherron Winters your honor. Sherron Winters is the victim of the aggravated battery in this case he is the only person who's at that dice game in that it's not my client it's somebody that's taller than my client and the fact that the only actual eyewitness not somebody speculating as to some what some blurry pixels on a very poor video show but the only actual eyewitness says is my not my client is compelling and that plus Levante Bell brings this case out of all those standard identification cases a lot of the briefing in this case gets bogged down in all those bigger factors when there's two big facts that which is there's an eyewitness who's right there and says that my client's not the guy and there's Levante Bell who we know had that murder weapon and was stopped fleeing the scene of that shooting. And we also know that Mr. Winters was extremely uncooperative after the shooting isn't that correct? I believe there's a detective's characterization that he didn't feel that Mr. Winters was a cooperative. He wasn't cooperative was he that that's what it's that's what his correct? Yes. Okay did he testify at trial? Yes Mr. Winters testified at trial he was called by the defense he uh directly said that my client was not the shooter that my that the shooter was somebody taller and larger my client's about five six uh and so basically so basically basically Mr. Easing then uh you're telling us that Mr. Winters said this is not the person who shot me that is what he testified to a trial. He did make can you address your client's clothing uh or clothing with your client's DNA being present near the uh the chase? So the the state recovers uh what's described as a nylon pierced you know it variously gets described as a nylon uh a wave cap or a do-rag uh and a white tank top that's intermeshed with a black t-shirt near the uh the scene uh my client's is one of multiple profiles and it's on each of those items. Now the remarkable thing to me is the state never tests the purported black t-shirt that's recovered there there's never a GSR test done on this t-shirt even though it's reportedly purportedly what the shooter was wearing only only a few hours at most before and then as to some of the other things you know this question of there's the do-rag or wave cap but the uh witness testimony is all over to the place is to whether whoever the shooter was and whoever the officers saw fleeing was actually wearing a do-rag or wave cap it's only after this linkage that we see start to see this uh come in in the witness's testimony. Well well let's go back uh I find it interesting that your reply brief what what in the reply brief did you talk not you but uh did the defense uh discuss the DNA at all that is it even mentioned in the reply brief? I I don't recall if it's mentioned either I don't believe it but even if we like well but let me ask my question it's not not responded to and and you just gave a response to Justice Johnson's in which you're not talking about the DNA specifically uh but the DNA which apparently you're not contesting uh is a match to Gardner and in the general population it's one in 530 quintillion which is uh according to the testament 1.8 trillion times more unlikely to be found than in to win the Powerball lottery I mean it's his DNA is what it is. Yeah I'm not disputing that my profile is on this. They found your client's profile would you agree to that? Yes. Okay that's the question so the t-shirt the white t-shirt belonged to your client and he took it off and also took off apparently a black shirt because they were twisted together now when we just look at that definitely he's there definitely he took off clothes Mr. Bell had on clothes but this person took off clothes and escaped and it all happened in the same vicinity and the gun he's running around those those lots in the alley as well everybody's around there so why going back to Justice Walker has the key question that we have to consider taking the evidence and in favor of the prosecution as we must uh why couldn't the jury come out with this decision? Your honor because of Lavontae Bell I think is crucial here. Well but but but but Lavontae Bell you know you can that doesn't mean uh that they didn't take account of what the testimony was it was given you're uh the uh uh a victim uh one of the victims testified the one who lived uh well uh right and so you know uh the jury didn't uh believe them that that's okay. Your honor I would submit that in every case where this court has reversed the insufficiency of the evidence uh it was facts that were before the jury or at least the trier of fact uh the question is whether they could draw reasonable inferences to get to proof beyond a reasonable doubt and given that almost completely uncontested evidence about Lavontae Bell it's not possible in this case to say that it's my client who was the shooter and Lavontae Bell that is not even taking putting aside that it's multiple profile and saying that it's certainly even pretend it's certainly my client's dna on those items all that means is that some of his clothing ended up in that alleyway that day. Why would somebody take off their clothing in an alleyway that day well it's may he's running around he's taking off his clothing so that's not normal conduct and even if your honor we take the next step and assume that uh it's being taken off as part of flight from the police nobody sees it we take off the clothing we have no idea how long it's actually there etc but even if we assume that it's somebody running from the police that that is dropping clothing we still don't have enough to infer back from that that it was my client and not Lavontae Bell that that committed the shooting maybe it was also fleet from the police in Wisconsin when he was stabbed yes your honor and I would certainly suggest that that flight months after the fact without any indication that he knows that uh he's a suspect or there there's a anything to do with this case I believe it's October and this shooting is in the prior May he's in uh Dane County Wisconsin he gets pulled over by the police uh it's he willingly gives them his ID and then a few minutes later uh the I think it's the Wisconsin State Police or it might be Dane County ends up drawing rifles and a gun on him he does lead them on a very brief chase to the next exit pulls over in a well-lit area and gives himself up now if we were seeing somebody that was evading the police he would not be giving off his Illinois ID when being stopped on that freeway the it's you know this is something that came up in he may not have known that he was elsewhere he may not have worn out for him there's no indication and this is why the brief cites the Wilcott case that actually ordered a new trial on that kind of evidence that uh without any indication that the defendant knows that they are a suspect evidence of flight just doesn't create any kind of favorable inferences should be excluded as prejudicial and he was also on a dark road and he drove until he was in a lighted area and then he stopped and surrendered to police correct it's very I think it's the next most of us he did what most people would do especially black people yeah this is an area this is an area of Dane County east of Madison uh it's consistent with him having panicked once after sitting there at a traffic stop and giving his Illinois ID to the officers suddenly he has I think it's two handguns and a rifle pointed at him so why don't you do this Mr. Euston walk us to through the neo the bigger uh just walk us through those those parameters that we need to consider just to briefly mention the factors you know normally we talk about opportunity to view attention the prior description the certainty at the time of the confrontation and the time delay I actually want to start with a prior description because it's so remarkable to me that officer Strigel puts out that testimony that says we don't write down a description when the Chicago police shoot somebody and uh so we start out with these very generic descriptions and you know the most detail we have is sort of the clothing it's other than african-american man of average build there's not much to those early descriptions now so I just want to remind you that you're out of time but I will allow you to complete your answer to Justice Walker's question yes your honor and the brief does go through in detail all these things I point out that the attention is reduced because these officers are in the middle of firing off eight shots at the Garfield Park they're all fairly young officers this is a high stress situation and beyond that at least for the three officers it's a cross race it's cross racial identification and uh this court knows the history of that you can look at Perry New Hampshire versus New Hampshire which is a fairly recent US Supreme Court case that acknowledged that as well and then finally your honor I'd like to speak to uh the time delay if you go back to the original Baker's case it talks about how weeks or months would seriously weigh against an identification this identification the first confrontations happened about four weeks after the fact and while this court while courts have sometimes excused longer delays when more here and finally your honors I'd like to point out that the only actual eyewitness to the shooting if we're going to apply the bigger factors is the guy who was right there who is Ron Winters and says it's not my client so fairly applying those biggest factors requires an acquittal of those two convictions in this case well thank you thank you honors and ask you reverse my client's convictions thank you very much counsel you do have uh two minutes for rebuttal we'll go to the counsel you may begin may please the court again assistant state attorney Amy McGowan for the people as your honors have noted when a defendant's challenge is to the sufficiency of the evidence such challenges are reviewed in a light most favorable to the prosecution this court does not ask itself whether the evidence proved defendant guilty beyond a reasonable doubt but whether any rational try or effect could have found so well how could any rational how find this man guilty when the Mr. Winters says this is the wrong guy he saw him he describes somebody different how can how can that possibly be where the person who saw the actual shooting and was injured seriously says you got the wrong guy judge respectfully I don't think that was he in court said he did not see the person who shot him he also when they were investigating the case he stated that he did not have an opportunity to view the person that it was quick it was within seconds he stated that he did not get a good look at the offender's face that it happened too fast that he only got a quick glance he told officers that he would not be able to make an identification if he was shown a photo array or a lineup now he was 17 years old when he was shot and the first time he's trying to identify anyone is more than four years later so after having admitted that he didn't have an opportunity to view he didn't have a degree of attention more than four years go by he wasn't able to make an identification so the his non-identification from a person who consistently said that they could not or positive identifications in this case and it's not only the council let me um jump in here why did you um discount bell when bell was actually caught at the scene and had a connection to the gun uh he also called his I believe it was the uncle and the uncle then falsely reported the gun stolen the next day which might be some indicia of guilt so why did you discount bell and go after garner when there was you know just as much cause uh pointing to him as the shooter the cause pointing to bell is how the murder weapon got to the scene we know that the gun was registered to terrence cooper we know that bell is his nephew and that um cooper testified that bell told him he took the gun from his house we know that cooper also knew defendant um the video of the actual shooting shows a person in a black t-shirt and bright blue pants commit the shooting even in defendant's brief i mean now he's talking that it doesn't show anything and but on page four of his brief he describes the video showing the actual person the man in the bright blue pants and the black t-shirt walk up and commit the shooting when that person runs away in the black t-shirt and bright blue pants james shavers identified him he watched the video in open court and said that's the defendant in the video he was 15 feet away from him he identified him there too the video shows and james shavers corroborates that the shooter was wearing bright blue pants and a black t-shirt officers testified no one else was wearing that outfit levante bell was not wearing that outfit levante bell did not commit the shooting the person in the bright blue pants and the black t-shirt did were the pants ever recovered because that seems to be the major determining factor or major evidence i should say right that the black t-shirt uh with the undershirt and the do-rag were recovered uh defendant not that i'm aware of took his pants off when he was running from the police um so wait what was the answer to the question then no no i'm sorry the pants were not recovered as far as i know defendant kept his pants on um we do have the shirt with his dna on it and the red with his dna on it um so as i was saying the the video shows defendant a person who was identified as a defendant as the shooter in this case we have an unbroken timeline james shavers and the three police officers see defendant again in the same outfit running from the shooting with his gun they all have the same general description and here it's a very short uh location we're talking about the they're at 33 33 maypole and the dice game where the shooting happened is 3306 maypole there's a poster board of the map and evidence we're talking a half city block the everyone described the evening as beautiful it was 8 p.m memorial day weekend the sun was still up not nighttime yet they all testified nothing was obstructing their view shapers as i said was 15 to 20 feet away from the defendant and the officers were behind him they too see the defendant they're at distances of 50 to 100 feet but closing in because defendant is running towards them they described they have complete head-to-toe uh views of defendant the jurors heard these witnesses describe the surprise look on defendant's face when he saw the officers they heard the witnesses describe how defendant slid to a stop and made a sharp abrupt impressive turn down the vacant lot at 30 through 24 maple this is where his clothes were found uh defendant makes much of the do-rag that james shavers observed defendant wearing at the first opportunity and i believe is shown on the video also the officers in the alley didn't know the do-rag because they were able to pay attention to his um short black hair they noted that he had a distinctive hairline a defined skull and cranium they mentioned his head shape i mean we have all in the briefs uh but i want to go back to something uh earners council had mentioned as important and uh would you say something else but rodriguez testified that the report over the radio which is what council said was that uh two black males wearing dark clothing and that's what she saw when she saw bell and alexander dark clothing was to report over the radio it immerse as we get to trial and and maybe it is the lighting i mean for you to say well you look at it yeah that he concedes that if you look at it but then the lighting changes and lighting can make colors very different in the videos we can't believe you know necessarily what we see because of the where the sun is and where the camera is and the lighting and so forth so if the report is dark clothing in a light pants is not clear clothing so wouldn't that show that maybe bell was the person no your honor i don't believe that's what that shows you have james shavers plus three officers who testified they gave the description of blue pants when detective when did they give the description of blue pants they at trial they testified that that's what i just said right so they when asked about their earlier descriptions they all testify that they had previously given descriptions of blue pants why do we know that they didn't write down they didn't write that down right no they did not write any reports for this so that's kind of isn't that kind of odd that the chicago police department doesn't write down descriptions of someone who shoots at the police officers i think the officers explained when they're involved in shootings they're not investigating it and they're not making reports as officers whatever they're they were looking for a suspect shooting or not so if there's somebody who's involved in a shooting that they're involved and there's a shot back all of a sudden the clothing mean nothing i mean i don't get that please try to explain it because i'm sure the public will want to know why the police department doesn't want to identify the clothing of a suspect that they're running after they did say i wouldn't say that the clothing means nothing and specifically when detective rodriguez was asked she didn't recall exactly all she said was all i can remember is it was dark clothing she didn't know if it was that's what she said over the radio it came that it was dark clothing and then she saw these people running right it was their clothing so she was asking great the fact that it's missing from the police report when police are supposed to be writing everything but they have a policy not to write it down in this situation is is is makes uh opens up a large question uh that the jury may not have been completely uh aware of and i can't understand i can't say to the chicago police department's policies i i have no answer for that that's fine that's fine if you're not able to address it possibly i want to follow up with the direction that justice hyman is going here you you uh we you we know that there were no reports done by those three rookie officers but someone did an investigation and someone took a report so the question comes back still with justice hyman's question well did someone write anywhere in a report that was taken down after they spoke to the officers some one who was investigating detective or otherwise did they then know anything about the light blue pants i don't the reports weren't admitted into evidence right and all we have they're not going to be admitted but you would have that information right um i i have what's in the record uh what's in the appellate record i don't have the court file i don't know what was in the police report okay so you know that's fine nobody testified to that is what you're saying and that's fine if it's not in the record i'll move on if it's not in the record it's not in the record but i want to come back to mr yeasty's argument he's arguing that as far as the sufficiency of the evidence is concerned what we're dealing with here is that no eyewitness identified gardner as a shooter and that there's no forensic evidence that links gardner to the weapon gardner to the weapon so if you can just respond to that because that's kind of where the sufficiency of the evidence takes us if we can if if what mr yeasty is saying is correct there's no eyewitness trial or otherwise who identified mr gardner as a shooter and there's no forensic evidence linking mr gardner to a gun or a weapon respond to that please yes what i would say your honor is that we have an unbroken timeline here we have a video that shows the actual shooting we have a witness who was on the scene in front of the ike sims building who watched the video and who was on the ground and watched defendant run past him james shavers identified defendant as the person in the video who committed the actual shooting now there's three officers behind james shaver yes behind james shavers and when the defendant runs towards them he sees officers he makes a quick turn down a lot they meet him at the end of the alley and uh he raises their gun and runs away he gets away from the officers he's not apprehended on scene but we do have his clothing the gun is there you're correct there's no forensic evidence linking him to the gun but there is circumstantial evidence we know that his friend um levante bell had the gun um also what i think is very important and wasn't addressed yet is that his car is just on the other side of the fence door open and running it's a car that he's insured to drive a car that has his a dry cleaning receipt a car that has his phone in it his his own iphone as evidenced by multiple selfie pictures taken of himself on that phone so when you put all of this together in the light most favorable to the state the jurors had sufficient evidence to find defendant guilty even though mr bell admitted to having fired the weapon uh that day or shortly before uh this shooting to his uncle well i think we have to take mr bell's admission for what it's worth um even defense council i i think admits there has to be something made up about that story there isn't a shooting at a liquor store seven blocks away so either that's me a half hour later bell calls his uncle to see if the guns are registered another half hour goes by take that over you froze for a couple of seconds yes i'm sorry the shooting happened at eight o'clock a half hour goes by before bell calls his uncle to ask if the guns registered that's all we know of the first conversation another half hour goes by it's nine o'clock now now again defendant hasn't been apprehended an hour after the shooting bell has this story we don't know if it's true and i'm not sure if i was frozen or cut off but i was saying i think even defendant admits some parts of bell's story has to be untrue there couldn't have been a shooting at a liquor store seven blocks away and the shooting here some part of it is made up bell wasn't there we have to take cooper's testimony for what it's worth we also know that he falsely reported the gun stolen um so yes it is tricky um with the gun but we know that it was cooper's gun we know cooper said he gave bell permission to use it cooper knows defendant bell knows defendant and defendant is the person in the video shooting uh aaron feisal well we know that there was a dark shirt and bright pants in the video correct and james shavers and the three witnesses now identification testimony too has to be taken in the light most favorable to the state and with the understanding that the it is the function of the triers of fact the jury was responsible for determining the weight to be given to the testimony to assess the credibility of the witnesses resolving consistencies and construe reasonable inferences and they listened to all these witnesses testify they were instructed as to the figures factors in uh in their jury instructions and in closing arguments the council went through them uh they watched each of the witnesses pointing to defendant and identify him in open court they listened to how each of the witnesses just 26 days after the incident viewed photo arrays um we're told that a subject may or may not be included but each pointed at the guy that's that's highly suspect when when uh you know so these bell was it's his gun and the police know it's his gun right and he's not in the array i can't say he was not in the array you're correct but i can't say why or the line right if he didn't match defendant or right if he didn't match defendant's description at all and he was in the array i mean i i do know that they try to get people similar looking similar height builds um i can't say why bell wasn't in the array but the jurors were all told this defense council argued all the evidence points to the jurors rejected that theory you uh the jurors also heard sharon witness testify and two they um were the triers of fact they judged his credibility as well they know that he wasn't cooperative um after the fact they knew that he testified uh sorry that he told officers he wouldn't be able to make an identification and sure enough he didn't make an identification um he consistently maintained that he could not or would not identify anyone but here we have four witnesses who did identify the defendant and like i said before unbroken timeline the video lends credence to their identification uh we have the video we have the witnesses identifying him as he's running down the street past them into the alley we have his clothes in the alley that he ran through we have his car on the other side of the fence um all of the evidence leads to defendant and not to levante bell so all pardon okay there was some evidence leading to bell however was there uh any just was there a description of bell at all by whom but do we know what bell's description was how does it line up to uh the description that winters gave we don't know we know detective rodriguez said she ran his information through to dispatch um which i believe is a general description um a birth date and driver's license number if she had it um and then was told to release him but i don't know any anything further about bell um i do know that he visited defendant a number of times in jail and that he too had addresses in both chicago and madison just like defendant um but other than that there's no information on bell on the record what about the fact that the police officer's testimony it's more specific at trial than it was at the time closer to these events and oftentimes i've heard the state say when the defendants or witnesses uh testimony gets who who testify for the defendant gets more specific they criticize that uh you know why didn't they say that at the beginning what where why did it become more specific with time how do you respond to that my only response to that is i'm not sure it wasn't brought out at trial what each of these officers said during the initial investigation uh what we have are the descriptions they gave on the stand they weren't asked in detail about what descriptions they gave in the beginning um we do know they gave a general height and weight i have panto here um i think i think it was panto i'm sorry i lost my spot um but five five six to five nine and defendant was five six um there was a talk if he was dark or medium complected and i think even looking through the record on an arrest report he's noted as dark complected but on another um at this medium complexion so these discrepancies were for the trier's effect to determine to resolve um one last thing i wanted to get back to on the witness identification defendant relies uh or cited macklin and relies uh on macklin and slim and i think slim outright rejects the comment for witnesses to be um off five to six inches 50 pounds or 15 years that it's not uncommon and it does not destroy their testimony that um you know the defendant noted that the witnesses didn't ask or didn't distinguish between defendant's nose whether it was broad or flat whether his face was round or oval and slim said that witnesses are not expected to um to individual features but a positive id can be sufficient with only a general description and they discussed many cases where a witness's failure to note missing teeth length of hair facial scars tattoos mustaches etc did not render the identification vague or uncertain and they deferred to the finder of facts findings and here the jurors were the finder of facts they resolved any inconsistencies they determined the weight to be given to the witnesses testimonies and identifications so um but in this case the eyewitness she didn't speak to any of the witnesses did she to determine whether or not go ahead oh i'm sorry dr macklem um right correct she she didn't and the jury and i'm sorry defendant was called witness macklin as an expert witness but also relies on a case macklin um their expert witness did testify of all the factors that could affect identification but then testified that she didn't actually interview the witnesses and to find out that if they affected them you would have to basically do further investigation so she didn't really have a solid answer and the jurors too they were able to accept or reject her theories and based on the verdict in this case we know what what the jurors found and who they found credible um okay you have one minute left counsel thank you uh in some defendant is on video and his black t-shirt do rag and bright blue pants walking up to and shooting a dice game shavers identified him as the person in the video and the person who came running right toward him with a gun 15 feet away three officers chased defendant into an alley after running away defendant discarded his shirt and side of the fence and in the light most favorable to the prosecution this is sufficient evidence to lead a reasonable trial your fact to find defending guilty so for these reasons and those stated in our briefs the people request conviction thank you very much attorney yeasting you have two minutes reserved for rebuttal yes and briefly your honors i think it's a serious mischaracterization to say that james shavers is an occurrence eyewitness in this case to the shooting itself the only actual eyewitness of all those people there is mr winters james james shavers is doing but the Thompson case we don't his lay opinion testimony saying well i saw someone i think is this guy running a little bit later so based on this cluster of blurry pixels in this video must be him and the fact that uh mr shavers purports to make an identification on a do-rag in that video when it is utterly impossible to try to tell is the kind of it's what honey ham from the illinois supreme court called bad apple testimony it shows just how much he's willing to exaggerate to say the things that he thinks is what the police or prosecutors want to hear in this case now justice hyman had asked about uh chicago police department policy regarding not writing down statements uh for police involved shootings that this is a 2014 police involved where they fired eight shots in garfield park uh i believe it's people versus horton takes judicial notice of department justice report and if you want some that a specific source on that policy it's been it's been litigated out and this was the practice at the time even if it wasn't an official policy and finally your honors this is we have nothing to explain away levante bell that's coming from the state there's nothing out there that can referee as to who the actual shooter was between mr bell who was stopped running from the shooting and who had his uncle got his uncle's that day and my client william garner without something to referee that difference we can't make the rational inferences that are necessary to support a conviction and therefore i would ask that this court reverse mr garner's convictions okay any questions from the panel okay well i'd like to thank both councils for your presentations on today you um were an excellent example of how to make uh an appellate argument i'm sure our students who are observing have probably taken quite a few notes and um will have something to strive for and so i i thank you for uh your advocacy on today it makes our jobs more difficult uh so we have taken everything under advisement and we'll issue our ruling um as soon as possible all right thank you very much that concludes these proceedings thank you